UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL TYRONE STAMPS,

      Plaintiff,              Case No. 2:22-cv-11119
                             District Judge Mark A. Goldsmith
v.                        Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

      Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14), and AFFIRM THE COMMISSIONER'S DECISION

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment

(ECF No. 14), and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

      Plaintiff, Carl Tyrone Stamps, via counsel, brings this action under 42

U.S.C. §§ 405(g) and/or 1383(c)(3) for review of a final decision of the

Commissioner of Social Security (Commissioner) denying his application for

disability insurance (DI) benefits under Title II of the Social Security Act.  This

matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 12), the Commissioner's cross-motion for summary judgment (ECF No. 14), and the administrative record (ECF No. 9).

### A.    Background and Administrative History

In January 2020, Plaintiff applied for DI benefits.  (ECF No. 9, PageID.214-220.)  He alleged his disability began on September 7, 2013, at the age of 46, the day after his previous application was denied.  (*Id.*, PageID.214.)[1]  In his disability report, he lists several conditions (degenerative joint disease (DJD) of the left shoulder, DJD of the cervical spine, shoulder impingement syndrome, allergic conjunctivitis with recurrent anterior uveitis, bilateral pes planus,[2] sleep apnea, and depression) as limiting his ability to work.  (*Id.*, PageID.241.)  Plaintiff's instant application was denied initially on March 9, 2020 and upon reconsideration on October 1, 2020.  (*Id.*, PageID.101-133, 136-151.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (*Id.*, PageID.152-153.)  On February 16, 2021, ALJ Ramona Fernandez held a hearing,

---

[1] In prior decision, dated September 6, 2013, ALJ Henry Perez, Jr. concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 29, 2008 through the date of the decision (ECF No. 9, PageID.79-95); on December 17, 2014, the Appeals Council denied Plaintiff's request for review (*id.*, PageID.96-100).

[2] "Pes planus" is "a condition in which the longitudinal arch is broken down, the entire sole touching the ground."  *Stedman's Medical Dictionary* 674890 (Nov. 2014).

at which Plaintiff and a vocational expert (VE), Scott Silver, testified.  (*Id.*, PageID.55-78.)  During the hearing, Plaintiff amended his alleged onset date (AOD) "to coincide with his 50th birthday, which would be September 1, 2017[.]" (*Id.*, PageID.59.)  On February 25, 2021, at which point Plaintiff was 53 years of age, ALJ Fernandez issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.*, PageID.39-54.)

Plaintiff submitted a request for review of the hearing decision/order.  (*Id.*, PageID.206-210.)  However, on April 11, 2022, the Appeals Council denied Plaintiff's request for review.  (*Id.*, PageID.28-33.)  Thus, ALJ Fernandez's decision became the Commissioner's final decision.  Plaintiff timely commenced the instant action on May 23, 2022.

## B.     Plaintiff's Medical History

The administrative record contains approximately 559 pages of medical records.  (ECF No. 9, PageID.389-947 [Exhibits 1F-9F]).  These materials were available to the ALJ at the time of her February 25, 2021 decision (*id.*, PageID.53-54), and will be discussed in detail, as necessary, below.

## C.     The February 25, 2021 Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 31, 2017, the amended AOD.  (ECF No. 9,

PageID.44.)  At **Step 2**, the ALJ found that Plaintiff had the following severe

impairments:  DJD in the left shoulder; bilateral carpal tunnel syndrome (CTS);

degenerative disc disease (DDD) in the cervical spine; cervical radiculopathy; left

ulnar neuropathy; obesity; and diabetes mellitus.  (*Id.*, PageID.44-45.)  At **Step 3**,

the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed

impairments.  (*Id.*, PageID.45.)  **Between Steps 3 and 4** of the sequential process,

the ALJ evaluated Plaintiff's residual functional capacity (RFC)[3] and determined

that Plaintiff had the RFC:

> . . . to perform light work as defined in 20 CFR 404.1567(b) except sit
> 4 of 8 hours; stand and/or walk 4 of 8 hours [*i.e., exertional
> limitations*]; no ladders, ropes, or scaffolds [*i.e., postural limitations*];
> frequently handle, finger, and reach; only occasional overhead
> reaching with the left upper extremity [*i.e., manipulative limitations*];
> and occasionally twist or turn at the neck.

(*Id.*, PageID.45-48.)[4]  At **Step 4**, the ALJ determined that Plaintiff was unable to

perform any past relevant work.  (*Id.*, PageID.48.)  At **Step 5**, the ALJ determined

---

[3] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

[4] There are differences between ALJ Perez's September 6, 2013 RFC and ALJ
Fernandez's February 25, 2021 RFC determination.  (*Compare* ECF No. 9,
PageID.45; *with*, *id.*, PageID.86.)  Thus, ALJ Fernandez explained:  "In the instant
case, the claimant provided clinical records containing sufficient objective
evidence to result in a residual functional capacity determination that deviates from

that, considering Plaintiff's age, education, work experience, and RFC, there were

other jobs that existed in significant numbers in the national economy that Plaintiff

could perform, such as collator (DOT # 653.687-010), router (DOT # 222.587-

038), and inspector/hand packager (DOT # 559.687-074).  (*Id.*, PageID.49.)  The

ALJ therefore concluded that Plaintiff had not been under a disability, as defined in

the Social Security Act, from August 31, 2017, through the date of the decision.

(*Id.*, PageID.49-50.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

*also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence as a reasonable

---

that in Exhibit B1A[,]" *i.e.*, ALJ Perez's September 6, 2013 decision (ECF No. 9,
PageID.79-95).  (*Id.*, PageID.45-46, 124.)

mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

Court does "not try the case de novo, resolve conflicts in evidence, or decide

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273

(6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence

standard, "'a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the

merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651

(quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

In this appeal, Plaintiff challenges the RFC determination of manipulative limitations of frequent handling, fingering, and reaching by alleging the ALJ failed to consider:  (1) all relevant evidence of Plaintiff's CTS and cervical radiculopathy; and, (2) his related symptoms and limitations.  (ECF No. 12, PageID.954, 963.)  While the organization of Plaintiff's argument is sometimes hard to follow, the gist of his argument seems to be that frequent handling, fingering, and reaching "does not take into account limitations associated with the arm braces," *i.e.*, "[t]he use of, need for, and restrictions associated with the braces are neither addressed nor challenged by the ALJ in her decision despite the support for such in both the evidence of record and Claimant's hearing testimony."  (*Id.*, PageID.964.)

### 1.    Medical evidence (braces, sleeves)

Plaintiff first challenges the ALJ's assessment that Plaintiff is capable of frequently handling, fingering, and reaching (*i.e.*, manipulative limitations), given the evidence of his CTS and cervical radiculopathy (and perhaps also his left shoulder DJD, cervical spine DDD, and left ulnar neuropathy), each of which the ALJ found to be severe at Step 2.  (ECF No. 12, PageID.954, 963.)  According to Plaintiff, this particular manipulative limitation does not account for "limitations

associated with the arm braces," which Plaintiff "first used post-trigger release surgery and later used . . . to control Stamps' CTS." (*Id.*, PageID.963-964.)

Within his argument on appeal, Plaintiff "presents evidence of his need for and use of braces primarily for his CTS, but also to aid with his tennis elbow and his right hand after he had trigger finger surgery[,]" including references to:

- "Mild" findings within the May 16, 2018 EMG results (ECF No. 9, PageID.415, 416, 462);

- Elizabeth King, M.D.'s September 25, 2018 notes, which reflect that Plaintiff had "numbness in the left hand ring and small fingers[,]" and Plaintiff's CTS "currently is well controlled with the use of braces[,]" (*id.*, PageID.412-413);

- Carrie Foggia, O.T.'s August 8, 2019 assessment that Plaintiff's bilateral hand motions were "within functional limits[,]" (*id.*, PageID.398); and,

- Elizabeth King, M.D.'s November 12, 2019 progress notes, which reflect that she "discussed use of an elbow sleeve, counterforce brace, gentle stretching, anti-inflammatories" for "lateral epicondylitis" with Plaintiff (*id.*, PageID.774-775).

(ECF No. 12, PageID.966-970.)

### a.   Consideration of medical records

Yet, the ALJ addressed these pieces of evidence within the written decision. Preliminarily, the Court notes that Plaintiff underwent a <u>right</u> middle finger trigger release on June 11, 2019. (*See, e.g.,* ECF No. 9, PageID.402-408.)  At Step 2 – after determining that bilateral CTS and cervical radiculopathy (as well as left

8

shoulder DJD, cervical spine DDD, and left ulnar neuropathy) – were among

Plaintiff's severe impairments, the ALJ stated:

> He is s/p [status post] <u>right</u> trigger finger release surgery, and the
> evidence indicates he has had a good result and recovery. ([ECF No.
> 9, PageID.774]).  The consultative exam showed no strength or
> manipulative deficits. ([*Id*., PageID.756-765]).  This is non-severe.

(ECF No. 9, PageID.44-45 (emphasis added).)

Within the RFC discussion, the ALJ made the following observations about

Plaintiff's CTS:

- "An EMG from May 2018 shows mild bilateral CTS, mild left side ulnar neuropathy, and remote C6 radiculopathy." ([ECF No. 9, PageID.415]). (*See also id*., PageID.413, 416, 458-459, 462.)

- Albeit without describing it as coming from Dr. King's September 25, 2018 notes, "[h]e has reported some numbness in the left hand and fingers, but he also indicates that his CTS is well controlled with the use of braces." ([*Id*., PageID.412-413])."

- "A functional evaluation from August 2019 shows his hand abilities are within functional limits bilaterally." ([*Id*., PageID.398]).  *However, the Court notes that occupational therapist Carrie Foggia noted the following exceptions:  "<u>right middle finger MP [metacarpophalangeal] 0-75, PIPJ [proximal interphalangeal] 30-90, DIPJ [distal interphalangeal] 0-67 . . . ."  (Id.)*

(ECF No. 9, PageID.47 (emphasis added).)  The ALJ then explained:  "These

impairments support his claim that he sometimes drops objects.  He is therefore

limited to frequent handling, fingering, and reaching."  (*Id*.)

Plaintiff claims the ALJ did not "accurately portray the symptoms and limitations of [his] wrist, elbow and hand impairments." (ECF No. 12, PageID.967-968 (emphasis added).) However, this assertion is unavailing. First, to the extent this assertion is based on the ALJ's characterization of Dr. King's September 25, 2018 notes, the Commissioner correctly points out that "the ALJ's summary of the medical report is accurate . . . ." (ECF No. 14, PageID.986 (citing ECF No. 9, PageID.47, 412-413).) Second, if Plaintiff intended to challenge as inaccurate the ALJ's characterization of occupational therapist Foggia's August 8, 2019 assessment that Plaintiff's bilateral hand motions were "within functional limits[,]" Plaintiff has not shown how the ALJ's failure to expressly acknowledge Foggia's exception for the right middle finger (*i.e.*, MP 0-75, PIPJ 30-90, DIPJ 0-67) warrants more restrictive – *e.g.*, no or only occasional (instead of frequent) handling, fingering, and reaching – manipulative limitations. (*Id.*, PageID.47, 398.) Indeed, at the February 16, 2021 hearing, when asked about his mid-2019 middle trigger finger surgery and a post-operative doctor note that Plaintiff "seemed to have recovered well from that surgery and only had occasional pain[,]" Plaintiff agreed this was "a correct statement for the right middle finger[.]" (ECF No. 9, PageID.63; *see also id.*, 391, 402-408.) Finally, to the extent Plaintiff's assertion of inaccuracy is based on a comparison of the medical records to his

hearing testimony, it will be addressed below within the subjective symptoms

discussion.  (*See* Section II.E.2.)

Plaintiff also claims the ALJ's reliance on "mild" findings from the May 16,

2018 EMG (*see* ECF No. 9, PageID.47, 398, 413, 415, 416, 462), without more,

"is insufficient" under SSR 16-3p.  (ECF No. 12, PageID.968-969.)  However, it is

clear from the ALJ's explanation that the limitation to "frequent handling,

fingering, and reaching[,]" (ECF No. 9, PageID.47), was based on more than the

May 2018 EMG's "mild" findings.

Finally, Plaintiff seems to contend the ALJ's citation of the "within

functional limits" August 8, 2019 hand range of motion assessment (ECF No. 9,

PageID.47, 398) is not consistent with the medical record from a later – November

12, 2019 – follow up visit, when Plaintiff and Elizabeth King, M.D. discussed

treatment for his lateral epicondylitis (*id.*, PageID.774-775).  (ECF No. 12,

PageID.969-970.)  Yet, the Commissioner contends the November 2019 treatment

note "fails to demonstrate that he required greater manipulative limitations . . . ."

(ECF No. 14, PageID.988.)  Dr. King's physical examination notes state, *inter*

*alia*:

> Examination of the right hand demonstrates well-healed incision in
> the palm.  No tenderness.  No triggering.  Able to make a fist.  Touch
> all fingertips to palm.  Residual 15-degree long finger PIP flexion
> contracture.

On the left upper extremity, tenderness at the left lateral epicondyle, worse with resisted wrist extension.  Full range of motion of the elbow.  No subluxation of the ulnar nerve.  Negative Tinel's at the elbow.  Sensation intact, median, radial and ulnar nerve distribution in the hand.  Early triggering of the left long finger with mild tenderness at the A1 pulley and over the PIP joint.  All digits warm and well perfused.

(ECF No. 9, PageID.774.)  Dr. King's plan included:

1.      For the right hand, *doing well*, progress activities as tolerated.

2.      For lateral epicondylitis, we discussed use of an elbow sleeve, counterforce brace, gentle stretching, anti[-]inflammatories.  His Mobic was refilled.  We discussed the role for cortisone injection for worsening symptoms.  Right now, he feels like *things are getting better*.  He will continue using ice as needed.

3.      Early trigger finger of left long finger.  Also discussed massage, anti[-]inflammatories, cortisone injection.  For now, *he is happy to observe*, will follow up if symptoms worsen.

(*Id.* (emphases added).)  As the Commissioner suggests in her brief, this treatment

is "conservative in nature . . . ."  (ECF No. 14, PageID.988-989.)

### b.     Opinion evidence

Beyond the medical records, the ALJ "also considered the medical

opinion(s) and prior administrative medical finding(s) in accordance with the

requirements of 20 CFR 404.1520c[,]" twice mentioning "manipulative"

restrictions.  (ECF No. 9, PageID.46, 48.)  While Plaintiff does not identify the

ALJ's treatment of the opinion evidence as an issue in this appeal (ECF No. 12,

PageID.954, 963) −  and, thus, it need not be considered by the Court, per my

12

Practice Guidelines for Social Security cases (*see* www.mied.uscourts.gov) − the ALJ's treatment of the medical opinion evidence underlies the RFC's manipulative limitations.

First, albeit without reference to dates, the ALJ found the state agency medical consultants' March 9, 2020 (Thomas Flake, M.D.) and September 15, 2020 (Thomas Chiambretti, D.O.) physical RFC assessments (*id.*, PageID.107-108, 120-122) – each of which adopted ALJ Perez's September 6, 2013 decision (*see id.*, PageID.86) and each of which included a limitation of "occasionally reach[ing] overhead with the left upper extremity[,]" – "not fully persuasive[,]" because they were "inconsistent" with the evidence of Plaintiff's "multiple upper extremity conditions . . . [,]" which supported "less lifting," "no ladders/ropes/scaffolds," and "manipulative restrictions." (ECF No. 9, PageID.48.) Second, and again without reference to date but *in Plaintiff's favor*, the ALJ found September 8, 2020 finding of "no physical limitations" on the consultative examination report (by Satish Khanzode, M.D.) "unpersuasive," because the statement "[n]o physical limitations noted at this time[,]" (*id.*, PageID.756-675), was "inconsistent with the testimony, the EMG, and the spinal and shoulder conditions, which do support some exertional, manipulative, postural, and hazard restrictions." (*Id.*, PageID.48.) The ALJ's scrutiny of the state agency medical consultants' and the consultative examiner's opinions reveals a careful analysis. (*Id.*, PageID.47-48.)

13

Preliminarily, the ALJ's consideration of the medical opinion evidence may speak more to the manipulative limitation of "only occasional overhead reaching with the left upper extremity" than it does to the manipulative limitation at issue in this appeal – *i.e.*, frequent handling, fingering, and reaching.  Even so, ALJ Fernandez's February 25, 2021 RFC limitations of frequently handling, fingering, and reaching and only occasionally overhead reaching with the left upper extremity (ECF No. 9, PageID.45) are *more restrictive* than:  (1) Dr. Khanzode's September 8, 2020 consultative report, which reflects "[n]o physical limitations noted at this time[,]" (ECF No. 9, PageID.759); (2) state agency medical consultant Dr. Chiambretti's September 15, 2020 "unlimited" handling and fingering assessments (*id.*, PageID.121-122); and, (3) state agency medical consultant Dr. Flake's March 9, 2020 "unlimited" handling and fingering assessments (*id.*, PageID.107-108).  As the Commissioner points out, "[an] argument that the ALJ erred in assessing a *more restrictive* RFC than that opined by the State agency consultants is curious and unavailing."  *Mosed v. Comm'r of Soc. Sec.*, No. 2:14-CV-14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) (Patti, M.J.), *report and recommendation adopted*, No. 14-CV-14357, 2016 WL 1084679 (E.D. Mich. Mar. 21, 2016) (Goldsmith, J.).  (ECF No. 14, PageID.984.)

More to the point, even though Plaintiff's prayer for relief asks the Court to remand for a reassessment, *inter alia*, of "medical opinion evidence," (ECF No. 12,

14

PageID.971), the Commissioner correctly notes that Plaintiff has "failed to identify any medical opinion that the ALJ improperly evaluated . . . [,]" and that an ALJ "has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1517, 416.917).  (ECF No. 14, PageID.989.)  Indeed, Plaintiff's motion does not appear to reference the ALJ's consideration of Dr. Khanzode's, Dr. Chiambretti's, or Dr. Flake's opinions (*see* ECF No. 9, PageID.48).  Accordingly, Plaintiff has not shown that the ALJ misapplied 20 C.F.R. § 404.1520c.

### c.    Summation

Here, the ALJ stated that she rendered her decision "after careful consideration" of  "all the evidence," and "the entire record[.]"  (ECF No. 9, PageID.43, 44, 45, 47.)  Consistent with the ALJ's representation, her Step 2 and RFC discussions contain numerous references to medical evidence of record (MER).  (*See*, *e.g.*, ECF No. 9, PageID.45, 47-48.)  Moreover, as set forth in detail above, Plaintiff has not shown reversible error in the ALJ's consideration of the medical records or opinion evidence in supporting the RFC.  Thus, the ALJ's conclusion that Plaintiff was able to "frequently handle, finger, and reach[,]" (*id.*, PageID.45), appears to be well-supported by substantial evidence, which is all that is required.  42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241.  "Our task is not to

15

reweigh the evidence.  That is solely the province of the Secretary." *Mullins v.*

*Sec'y of Health & Hum. Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) (citing

*Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)).  "If the ALJ's decision is

supported by substantial evidence, then reversal would not be warranted even if

substantial evidence would support the opposite conclusion." *Bass*, 499 F.3d at

509 (citing *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)).

### 2.    Symptoms (pain, grip strength, numbness, cramps)

Plaintiff also challenges the ALJ's evaluation of his symptoms and

limitations from CTS and cervical radiculopathy (and perhaps also his left shoulder

DJD, cervical spine DDD, and left ulnar neuropathy).  (ECF No. 12, PageID.954,

963.)  This statement of error is governed by 20 CFR §§ 404.1529, 416.929 ("How

we evaluate symptoms, including pain.") and SSR 16-3p ("Evaluation of

Symptoms in Disability Claims").  (*Id.*, PageID.969, 971.)

### a.    The ALJ's consideration of Plaintiff's testimony

At various points in the written February 25, 2021 decision, the ALJ

referenced Plaintiff's hearing testimony and reports of pain.  (ECF No. 9,

PageID.45-48.)  Within the RFC discussion, the ALJ explained that she

"considered all symptoms and the extent to which these symptoms can reasonably

be accepted as consistent with the objective medical evidence and other evidence,

based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p."

(ECF No. 9, PageID.46.)  The ALJ then found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (*Id.*, PageID.47.)  Also, the ALJ provided the following explanation for why Plaintiff's testimony was "not fully consistent with the evidence[:]"

> The records do not support restrictions on lifting to no more than 10 pounds.  The claimant does not report significant recliner use to any treating physician.  The records show improved diabetes with medication and dietary changes.  *His CTS has improved*, and he has little treatment for the shoulder or neck.  The limited treatment does not suggest any disabling condition or pain.  Further, he admitted activities suggestive of work and has worked since the amended alleged onset date, though at less than substantial gainful activity.[5]  There is no medical opinion indicating he cannot work.  The undersigned concludes he has severe but not disabling conditions and pain.

(*Id.*, PageID.47 (emphasis added).)  Additionally, the ALJ explained what supported or did not support various limitations.  (ECF No. 9, PageID.47-48.)

### b. Testimony upon which Plaintiff relies

At the February 16, 2021 hearing, Plaintiff testified about pain, *e.g.*, in his hand and/or finger and when lifting.  (*See*, *e.g.*, ECF No. 9, PageID.63, 69.) Arguing that the ALJ in this case "failed to mention the limitations associated with

---

[5] These include caring for his disabled brother, which involves transporting him, shopping, cleaning, and cooking.  (ECF No. 9, PageID.47, 60; *see also*, ECF No. 9, PageID.291 ¶¶ 6, 7; *id.*, PageID.328 ¶¶ 6, 7.)

Stamps' severe impairments when she evaluated Stamps' RFC[,]" and claiming to present "evidence of his need for and use of braces primarily for his CTS, but also to aid with his tennis elbow and his right hand after he had trigger finger surgery[,]" (ECF No. 12, PageID.965-966), Plaintiff points to three particular portions of his administrative hearing testimony concerning his hands.

First, Plaintiff points to testimony about braces and sleeves. When Plaintiff was asked about an EMG, presumably the May 16, 2018 EMG (ECF No. 9, PageID.416, 458-459, 462), and treatment thereafter for his hands, he testified:

> Well I had trigger finger surgery on my right hand and the doctor just gave me carpal tunnel braces for both wrists and told me to buy a sleeve so that I could help with the tennis elbow and just do medication and then ice, you know, and the hand exercises to relieve my neck spasms and also to try to deal with the carpal tunnel and the cocking of my hand, the trigger fingers of my hands.

(*Id.*, PageID.62.)[6] Plaintiff argues this testimony is consistent with the medical record from a November 12, 2019 follow up visit, when Plaintiff and Elizabeth King, M.D. discussed "use of an elbow sleeve, counterforce brace, gentle stretching, anti[-]inflammatories" for Plaintiff's "lateral epicondylitis[,]" (*id.*, PageID.774-775). (ECF No. 12, PageID.966-967.) This, alone, does not adequately challenge the ALJ's conclusion that "claimant's testimony is not *fully*

---

[6] On its own review, the Court notes that, during examination by his counsel, Plaintiff also testified that he wears compression sleeves on top of his braces as suggested by the doctor. (*Id.*, PageID.72.)

consistent with the evidence[,]" (ECF No. 9, PageID.47 (emphasis added)),  the

explanation for which is set forth in the immediately preceding subsection (Section

II.E.2.a).  And, as already noted above (Section II.E.1.a), Dr. King's November

2019 treatment plan was conservative in nature, as the Commissioner suggests

(ECF No. 14, PageID.988-989).  In particular, the Court is persuaded by Dr.

King's note that, "[f]or now, [Plaintiff] is happy to observe, will follow up if

symptoms worsen."  (ECF No. 9, PageID.774.)

Second, Plaintiff points to his testimony about "the challenges of using

braces for his carpal tunnel."  (ECF No. 12, PageID.967.)  At the hearing, the ALJ

referenced the EMG and, seemingly, Elizabeth King, M.D.'s September 25, 2018

notes that Plaintiff's CTS "currently is well controlled with the use of braces[,]"

(ECF No. 9, PageID.412-413).  (*Id*., PageID.62-63.)  When asked if this was a fair

statement, Plaintiff replied:

> Yes, at times.  If I have to do something with my hands and I can't
> have the brace on, that's when I make sure that I have to sleep with
> the braces to kind of get it to go away in the next couple days of the
> month, to lessen that *pain*.

(*Id*., PageID.63 (emphasis added).)  Plaintiff contends the ALJ's written statement

that Plaintiff "indicates . . . his CTS is well controlled with the use of braces[,]"

(*id*., PageID.47), "is not entirely accurate."  (ECF No. 12, PageID.967.)  But, as

noted above, the ALJ accurately characterized Dr. King's September 25, 2018

notes (*compare* ECF No. 9, PageID.47; *with*, *id*., PageID.412-413).  (ECF No. 14,

19

PageID.986.)  Instead, Plaintiff is asking the Commissioner to accept his

testimony, but "ALJs are not required to accept a plaintiff's subjective complaints

as support for a more restrictive RFC[,]" *Jones v. Comm'r of Soc. Sec.*, No. CV 20-

11851, 2021 WL 4205061, at *4 (E.D. Mich. June 30, 2021) (Stafford, M.J.),

*report and recommendation adopted*, No. 20-CV-11851, 2021 WL 3629897 (E.D.

Mich. Aug. 17, 2021) (Cox, J.).  (ECF No. 14, PageID.985.)

Third, Plaintiff notes that, when asked if he had any functional problems

with his hands during the course of an average day, he responded:

> Yes.  Yes, with my raising stuff and holding stuff with a good grip
> because if my hands are numb, I kind of -- sometimes I might drop it,
> so I kind of watch when I do that and like trying to fill out an
> application, I have to stop because my hand, I will get cramps writing.
> I can't write for long periods of time.

(ECF No. 9, PageID.72; ECF No. 12, PageID.967.)  Yet, within the RFC

discussion, the ALJ twice acknowledged Plaintiff's allegation that he "sometimes

drops objects[,]" ultimately found this claim supported by the evidence, and

accordingly assessed the limitation of "frequent handling, fingering, and reaching."

(ECF No. 9, PageID.46, 47.)  (*See also* ECF No. 14, PageID.984.)  To the extent

Plaintiff complains the ALJ did not address his testimony about cramps when

writing (ECF No. 12, PageID.969), the Commissioner convincingly argues that

"the ALJ was not required to discuss every piece of [Plaintiff's] testimony[,]"

(ECF No. 14, PageID.987).  Indeed, the ALJ "is not required to analyze the

relevance of each piece of evidence individually.  Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'" *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953).  In Plaintiff's case, the ALJ just factored that information in differently than Plaintiff would have liked.

### c.    Summation

Plaintiff contends that the ALJ's aforementioned observations about Plaintiff's ability to handle, finger, and reach (*see* ECF No. 9, PageID.47) "does not accurately portray the symptoms and limitations of [his] wrist, elbow and hand impairments[,]" given his testimony about the pain he experiences if he "ha[s] to do something with [his] hands and [he] can't have the brace on," (ECF No. 9, PageID.63), as well as his testimony about grip strength, numbness, and cramps (*see id.*, PageID.72).  (ECF No. 12, PageID.968.)  As Plaintiff sees it, the ALJ cites Dr. King's September 25, 2018 notes that Plaintiff's CTS "currently is well controlled with the use of braces[,]" (*id.*, PageID.412-413), but "does not address [his] testimony that when he needs to use his hands, he cannot have the braces on[,]" does not "mention [his] statement concerning pain associated with using his hands absent the braces[,]" and "ignores [his] testimony that he has trouble gripping items or writing."  (*Id.*, PageID.968-969 (citing ECF No. 9, PageID.63, 72).)  Plaintiff further claims the ALJ does not "question Stamps' need for or use

of braces for his CTS despite an earlier functional evaluation showing hand abilities as being within normal limits[,]" and that his testimony is "evidence of [his] difficulty performing work-related activities (e.g., writing and gripping)," and "supports his inability to perform such activities on a sustained basis."  (*Id.*, PageID.970.)

Although Plaintiff claims the limitation of "frequently" handling, fingering, and reaching does not "take into account limitations associated with the arm braces," (ECF No. 12, PageID.963-964), he does so largely by comparing his own testimony to the ALJ's written decision (*id.*, PageID.966-970).  But, as already noted, the ALJ is not required to accept Plaintiff's subjective complaints in support of a more restrictive RFC, *see Jones*, 2021 WL 4205061, at *4, nor is the ALJ required to individually analyze each piece of evidence, *Bailey*, 413 F. App'x at 855.  (ECF No. 14, PageID.985, 987.)  Instead, the ALJ must consider Plaintiff's testimony in accordance with the appropriate regulations and rules.

Here, Plaintiff has not shown error in the ALJ's application of 20 C.F.R. §§ 404.1529 and 416.929 or SSR 16-3p.  Put another way, he has not shown his entitlement to an order of remand "direct[ing] the Administrative Law Judge to reassess Plaintiff's subjective symptom description consistent with the requirements of Social Security Ruling 16-3p," (ECF No. 12, PageID.971).  And the narrow scope of judicial review of the Commissioner's final administrative

decision does not include re-weighing evidence, deciding questions of credibility, or substituting the court's judgment for that of the ALJ.  *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Bass*, 499 F.3d at 509.

### F.    Conclusion

Plaintiff claims the ALJ does not "cite evidence of record that specifically disproves or questions Stamps claims."  (ECF No. 12, PageID.970.)  Yet, as the Commissioner correctly notes, "Plaintiff carries the burden of proof through step four[.]"  (ECF No. 14, PageID.986.)  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422-423 (6th Cir. 2008) ("During the first four steps, the claimant has the burden of proof[.]").  *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").

Plaintiff has not shown legal error in the ALJ's RFC determination or treatment of subjective symptoms.  Accordingly, for the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must precisely recite the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  July 6, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

24